IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| SES CIVIL AND ENVIRONMENTAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:24-cv-07251-BHH |
| | ) | |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| U.S. SPECIALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DAMAGES**

**COMES NOW**, Plaintiff SES Civil and Environmental LLC ("SES"), by and through its undersigned counsel of record, and pursuant to Fed. R. Civ. P. 3 and 4, and Local Civ. Rules 1.05 and 3.01 (D.S.C.), hereby files this Complaint for Damages ("Complaint") against Defendant U.S. Specialty Insurance Company ("USSIC"), showing this Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.

SES is an Alaskan Limited Liability Company formed under the laws of the State of Alaska with its principal place of business being located at 111 West 16th Avenue, Suite 411, Anchorage, Alaksa 99501 and is registered with the Tennessee Secretary of State and authorized to conduct business as a foreign entity in the State of Tennessee, with its principal place of business in Tennessee being located at 10101 Global Way, Knoxville, Tennessee 37932;

(a)     SES is a wholly owned subsidiary of Bristol Bay Construction Holdings LLC ("BBCH") which is an Alaskan Limited Liability Company, with its principal place of business being located at 111 West 16th Avenue, Suite 400, Anchorage, Alaska 99501 and is registered with the Tennessee Secretary of State and authorized to conduct business as a foreign entity in the State

1

of Tennessee, with its principal of business with its principal place of business in Tennessee being located at 10101 Global Way, Knoxville, Tennessee 37932;

  (b) SES is a member managed LLC with BBCH being the sole member;

  (c) BBCH is a manager managed LLC with Bristol Bay Native Corporation ("BBNC"), an Alaskan corporation, with its principal place of business being located at 111 West 16th Avenue, Suite 400, Anchorage, Alaska 99501, being the sole member; and

  (d) Duncan Morrison is the CEO/Manager of BBNC who resides in Martin, Tennessee.

2.

Based on information and belief, USSIC is a Foreign Insurance Company organized and existing under the laws of the State of Texas or Maryland, with its principal place of business being located at 13403 Northwest Freeway, Houston, Texas 77040. USSIC issues Performance and Payment Bonds from its office in Florida located at 3375-B Capital Circle, N.E., Tallahassee, Florida 32308. USSIC may be served with process by serving the South Carolina Director of Insurance pursuant to SC Code § 38-5-70.

3.

This Court has subject matter jurisdiction over this action under 28 U.S.C.A. § 1332(a)(1) because SES (Alaska) and USSIC (Texas or Maryland) are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Therefore, this action satisfies the amount-in-controversy requirements for involving this Court's diversity jurisdiction.

4.

This Court has personal jurisdiction over USSIC as USSIC transacts business and issues Performance and Payment Bonds within the State of South Carolina and has contractual

involvement with the project which is the subject matter of this action and which is located in Charleston, South Carolina. The exercise of jurisdiction over the parties will not violate due process because SES's causes of action against USSIC grow out of USSIC's purposeful contact with the State of South Carolina through the Performance Bond that USSIC issued to SES covering the project that is the subject matter of this action, which is located in Charleston, South Carolina.

5.

Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Charleston, South Carolina. Moreover, Paragraph 9 of the Performance Bond, which USSIC and SES both agreed to, stipulates that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located . . . ." Given that the project is located in Charleston, South Carolina, venue is proper under 28 U.S.C. § 1391(b)(2) and pursuant to the terms of the Performance Bond.

**FACTUAL BACKGROUND**

A.  **The Subcontract, Project And Performance Bond**

6.

On or about September 25, 2020, SES and Underwater Mechanix Services LLC ("UMX") entered into a subcontract agreement (No. 1A001.4087.0001.20.2-7919) (the "Subcontract") for UMX to provide all necessary labor; materials; tools; supplies; equipment; transportation; supervision; technical, and other services; to perform all operations necessary and required to satisfactorily provide construction services to complete the repairs to the TC Wharf per Exhibit C, Scope of Work (the "Work") for the TC Dock Repairs – Joint Base, located in Charleston, South

Carolina (the "Project"). A true and accurate copy of the Subcontract is attached hereto and is incorporated herein by reference as **Exhibit 1**.

7.

On or about October 27, 2020, USSIC, as Surety, issued a Performance Bond (Bond No. 1001153904), naming UMX as Contractor and SES as Owner, covering the Work that UMX provided for the Project. A true and accurate copy of the Performance Bond is attached hereto and is incorporated herein by reference as **Exhibit 2**.

B.    **UMX's Work And Default**

8.

There were problems with the Work that UMX provided to SES for the Project resulting in SES declaring UMX in default of the Subcontract.

9.

On April 21, 2022, SES first declared UMX in default of its contractual obligations to SES. In accordance with the terms of the Subcontract and Performance Bond, SES sent UMX a Notice to Cure letter dated April 21, 2022, which declared UMX in default for failure to perform its Work in conformance with the requirements of the Subcontract and failure to make progress endangering timely completion of the Project.

10.

On April 25, 2022, UMX responded to SES's Notice to Cure explaining that UMX's inability to meet SES's schedule was due to safety concerns.

11.

SES sent a reply letter dated April 29, 2022, to UMX and USSIC, addressing UMX's safety concerns making it clear that SES was not asking UMX to direct workers to work extra hours as

doing so would create unsafe working conditions, but that SES was asking UMX to add additional labor and properly staff the Project as promised by UMX.

12.

On May 10, 2022, a pre-default conference was held between SES, UMX, and USSIC. Following that pre-default conference, a Corrective Action Plan was issued on May 12, 2022.

13.

On June 16, 2022, SES sent a letter to UMX and USSIC regarding SES's Notice of Failure to Correct Conditions of Default related to UMX, referencing the Corrective Action Plan issued on May 12, 2022, for UMX's failure to increase personnel and production levels on the Project as promised by UMX.

14.

SES's June 16, 2022, Notice of Failure to Correct Conditions of Default was sent to UMX because of UMX's failure to follow through with the May 12, 2022, Corrective Action Plan which triggered USSIC's obligations under the Performance Bond which provides as follows:

> **3.**     If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
>
> **3.1**     The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract.  If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contract Default.

(**Exhibit 2**, attached hereto).

5

### C.     UMX's Termination

15.

On July 1, 2022, SES formally terminated UMX with SES issuing UMX a Notice of Termination that was also sent to USSIC requesting a response from USSIC under the Performance Bond.

16.

As a result of SES's Notice of Termination, SES, UMX, and USSIC took part in a conference call on July 6, 2022, which was memorialized in an e-mail from USSIC to Michael Bock wherein USSIC requested all necessary information for USSIC to conduct its claim investigation, with USSIC conducting a site inspection on July 14, 2022.  SES thus satisfied all of its requirements under Paragraph 3 of the Performance Bond triggering USSIC's obligations.

17.

Paragraph 4 of the Performance Bond provides in relevant part that:

> **4.**     When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:
>
> **4.1**     Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract;

(**Exhibit 2**, attached hereto).

### D.     UMX's Reinstatement

18.

On July 29, 2022, SES and USSIC, consistent with Paragraph 4 and 4.1 of the Subcontract, agreed to and arranged for the reinstatement of UMX to complete its Work on the Project, with UMX's reinstatement being contingent upon client, the United States Army Corps of Engineers

(the "Government"), approval of the updated schedule, and a full execution of Subcontract Modification 4.

19.

Paragraph 3 of the Performance Bond stipulates that SES's allowing UMX a reasonable time to perform its Work under the Subcontract shall not waive SES's right to subsequently declare UMX to be in default:

> **3.**     If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
>
>> **3.1**     The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract.  If the Owner, the Contractor and the Surety agree, *the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contract Default*.

(Emphasis added) (**Exhibit 2**, attached hereto).

20.

Paragraph 4 of the Performance Bond further provides that SES's damages resulting from UMX's reinstatement would be at USSIC's expense:

> **4.**     When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly *and at the Surety's expense* take one of the following actions:
>
>> **4.1**     Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract;

(Emphasis added) (**Exhibit 2**, attached hereto).

21.

UMX consistently failed to provide adequate manpower and to perform its Work in accordance with the reinstatement requirements for the next five months following UMX's reinstatement.

22.

UMX consistently failed to provide the amount of personnel as committed for the Project; failed to meet Project milestones; failed to achieve progress on the Spall Repairs; and failed to keep the overall schedule as provided for in Subcontract Modification 4.

23.

The Performance Bond provides that upon UMX's formal termination, USSIC is responsible for the correction of UMX's defective Work and completion of the Subcontract, and to pay SES's associated legal fees, delay costs, and liquated damages:

> **6.** After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:
>
> > **6.1** The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
> >
> > **6.2** <u>Additional legal, design professional and delay costs</u> resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and
> >
> > **6.3** Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

(**Exhibit 2**, attached hereto).

24.

On December 12, 2022, SES declared UMX in default given UMX's continuous failure to comply with the reinstatement requirements, with another call between SES, UMX, and USSIC occurring on January 3, 2023.

25.

UMX's performance failures left SES with no other option but to supplement UMX's Work with its own manpower to prevent the Project schedule from slipping even further behind than what had already occurred.

26.

On May 19, 2023, SES issued UMX Subcontract Modification 6, a unilateral modification reducing the Subcontract value by $402,886.65 due to the problems and delays with UMX's Work on the Project, and to cover the cost of SES's labor and equipment to self-perform portions of UMX's Work for the period between January 23, 2023, and April 30, 2023.

27.

On August 7, 2023, SES issued two additional unilateral deductions to UMX, Subcontract Modification 7 and 8, further descoping UMX's Work to progress the Project towards completion.

28.

SES's Subcontract Modification 7 reduced the Subcontract value by $35,749.86 to reflect USACE's Change Order P00006 dated May 23, 2022, which removed "FRP Curb Replacement" from the UMX's Work.

29.

SES's Subcontract Modification 8 further reduced the Subcontract value by $113,634.51 to reflect the SES's labor and equipment costs for the period between May 1, 2023, and June 30, 2023.

**E.     SES's Damages**

30.

On September 26, 2023, SES sent UMX and USSIC a letter regarding various outstanding contractual issues, namely UMX's inability to provide adequate manpower to meet the Project schedule pursuant to UMX's reinstatement and Subcontract Modification 4.

31.

SES's September 26, 2023, letter addressed the fact that UMX was overpaid for its Work and owed SES the principal amount of $338,889.63 (later recomputed to $213,381.39), not including liquidated damages, later assessed by the Government, for which USSIC is responsible pursuant to Paragraph 6 of the Performance Bond.

32.

SES was forced to incur $825,523.52 in overhead and internal costs as a result of UMX's delays on the Project.

33.

Given the problems with the Work that UMX provided for the Project, the Government also assessed liquidated damages against SES in the amount of $83,433.00.

34.

On May 30, 2024, SES issued a letter notifying USSIC of the $83,433.00 in liquidated damages assessed by the Government against SES resulting from the Work that UMX provided for the Project.

35.

Based on the foregoing, and given USSIC's involvement and awareness of UMX's continuous defaults on the Project and obligations contained in the Performance Bond, USSIC is responsible for SES's damages related to the Work that UMX provided for the Project.

36.

Given the issues with the Project, on October 5, 2023, UMX filed a Demand for Arbitration against SES initiating the proceeding styled: *Underwater Mechanix Services, LLC vs. SES Civil and Environmental, LLC,* American Arbitration Association, Construction Industry Rules, AAA Case No. 01-23-0004-4239, with SES, on October 30, 2023, filing an Arbitration Answering Statement and Counterclaim or Joinder/Consolidation Request with the parties currently engaging in discovery.

37.

SES has performed all conditions precedent to, or those conditions have been waived for, SES to pursue and obtain the relief sought in this Complaint.

## COUNT I
## ACTION FOR BREACH OF CONTRACT

38.

SES incorporates herein by reference all allegations contained in Paragraphs 1 through 37 of this Complaint and reiterates all those allegations.

39.

SES and USSIC through the Performance Bond entered into a binding contract regarding the Work that UMX provided to SES for the Project.

40.

USSIC breached and unjustifiably failed to perform the contract by: (a) failing to pay SES for its damages related to reinstating UMX to complete its Work for the Project; (b) failing to correct or pay for the correction of the defective Work that UMX provided for the Project; (c) failing to pay SES for its associated legal, design, professional, and delay costs resulting from the Work that UMX provided for the Project; and (d) failing to pay SES for the liquidated damages and deductive modification assessed by the Government against SES regarding the Work that UMX provided for the Project.

41.

SES suffered damages as a direct and proximate result of USSIC's breaches of the contract including, but not limited to, the following: (a) SES overpaid UMX the principal amount of $213,381.39 for the Work that UMX provided for the Project; (b) SES has been assessed the principal amount of $83,433.00 in liquidated damages related to the Work that UMX provided to SES for the Project; (c) $791,246.11 to reflect the Government's deductive modifications due to UMX's use of improper materials, regarding non-structural pile jackets; and (d) $825,523.52 incurred by SES in overhead and internal costs due to UMX's delays on the Project and other issues.

42.

The principal amount of SES's damages related to the Work that UMX provided for the Project, to date, totals at least $1,913,584.02 for which USSIC is liable to SES under the

Performance Bond, including, but not limited to, Paragraphs 3.0, 3.1, 4.0, 4.1, 4, 6, 6.0, 6.1, 6.2, and 6.3.

43.

SES is entitled to recover prejudgment interest on the principal amount of its damages totaling $1,913,584.02, to date, from USSIC under South Carolina law.

44.

SES is entitled to recover its attorneys' fees and expenses from USSIC under the Performance Bond (Paragraph 6.2).

45.

SES has performed all conditions precedent to recover the damages sought in this Count or those conditions precedent have been waived.

**WHEREFORE**, SES respectfully requests that this Court enter judgment in favor of SES and against USSIC for Breach of Contract for USSIC's failures to comply with the terms of the Performance Bond for:

(a) the principal amount of at least $1,913,584.02; plus

(b) prejudgment interest on the principal amount of at least $1,913,584.02; plus

(c) attorneys' fees and expenses; plus

(d) all costs of this action; plus

(e) such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

SES respectfully demands a trial by jury as to SES's Count and all issues in this Complaint which are so triable.

Respectfully submitted this 12th day of December 2024,

        **SMITH CURRIE OLES LLP**

        */s/ Matthew E. Cox*
        Matthew E. Cox, S.C. Fed. Bar No. 7531
        5727 Westpark Drive, Suite 200
        Charlotte, North Carolina 28217
        Telephone: (704) 334-3459
        Facsimile: (704) 334-7850
        mecox@smithcurrie.com

        *Attorney for Plaintiff SES Civil and Environmental LLC*